UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| VIVIAN HARDWICK, | ) | |
|     *Plaintiff*, | ) | |
| v. | ) | No. 1:07-CV-01 |
| | ) | |
| CITY OF CLEVELAND, CLEVELAND, | ) | Chief Judge Curtis L. Collier |
| POLICE DEPARTMENT, | ) | |
| CHRIS JACQUES, INDIVIDUALLY | ) | |
| | ) | |
|     *Defendants*. | ) | |

**MEMORANDUM**

Before the Court is a motion for summary judgment filed by defendants City of Cleveland ("City"), Cleveland Police Department ("CPD"), and Chris Jacques ("Jacques") in his individual capacity (collectively, "Defendants") (Court File No. 33). Defendants also filed a memorandum in support of their motion for summary judgment (Court File No. 36). Plaintiff Vivian Hardwick ("Plaintiff") filed a response (Court File No. 40), to which Defendants filed a reply (Court File Nos. 43 & 44).[1] For the following reasons, Defendants' motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 33).

**I.    Relevant Facts and Procedural History**

    **A.    Plaintiff's Arrest**

The events giving rise to this case began on the afternoon of February 1, 2006, as Plaintiff drove through a school zone. A crossing guard, Talece Darcy, motioned for Plaintiff to slow down

---

[1]Defendants filed a two-page reply accompanied by a memorandum in support of their reply. Normally, the reply is contained in a single memorandum.

and then stepped in front of her car (Court File No. 40-2 ["Hardwick dep."], pp. 82-84). Darcy alleges that before Plaintiff slowed down, her car hit Darcy's wrist, causing her body to twist around (Court File No. 33-3 ["Darcy affidavit"], ¶ 4). However, Plaintiff denies her car made contact with Darcey (Hardwick dep., p. 84). When Plaintiff stopped her car, Darcy commented to Plaintiff about the need to slow down and Plaintiff then drove off (*id*., p. 85; Darcy affidavit, ¶ 5). Darcy called the police, and Jacques, a Cleveland police officer, arrived (Darcy affidavit, ¶ 6). Darcy told him Plaintiff's car hit her and she provided him Plaintiff's license plate number (*id*.). As a result of being struck, Darcy sought medical treatment for her wrist, shoulder, and back (Darcy affidavit, ¶ 7).

Using the license plate number, Jacques determined Plaintiff's address, and later that day he went to Plaintiff's house to question her. When Jacques came to Plaintiff's door, Plaintiff was napping (Hardwick dep., p. 94). She heard him bang on her door but was unaware the noise was from a police officer (*id*., p. 108). From her upstairs bedroom, she yelled several times for the person at her door to leave her property (*id*., pp. 108-09). She then started walking downstairs and was able to see that the person at her door was a police officer (*id*., pp. 110-11). She opened the door for Jacques, who said he was investigating an accident involving Darcy (*id*., pp. 113, 119). Jacques claims Plaintiff admitted to him she had hit Darcy (Court File No. 33-22, ["Jacques dep."], p. 60). Plaintiff denies making an admission she hit Darcy; she claims she admitted she had probably been speeding but insisted there was no accident (Hardwick dep., p. 119). Jacques asked Plaintiff for her driver's license, insurance information, and vehicle registration (Hardwick dep., p. 121). She questioned him about the incident rather than getting the requested documents, which were in her purse located upstairs and in the car located in the garage (*id*., p. 122). The delay

2

prompted Jacques to tell Plaintiff he would have given her a citation but was now going to arrest her (*id.*, p. 121). Plaintiff responded that she would get the information, so she "made an attempt to turn and go up the stairs to get" the information, but Jacques grabbed her from behind (*id.*, pp. 123-24).

Jacques handcuffed Plaintiff. The arrest took place inside the home, and Plaintiff remembers pushing the door closed but Jacques pushing it in (Court File No. 33-21, p. 115). Once he was in the house, she did not tell him to leave (*id.*, pp. 116-17). Jacques's description of the incident also indicates the arrest took place in Plaintiff's house (Jacques dep., pp. 61-67).

After arresting Plaintiff, Jacques tasered her twice (*id.*, pp. 124-25; Court File No. 33-2, p. 2).[2] A neighbor of Plaintiff's who witnessed the occurrence from across the street heard Plaintiff yelling at the officer and waving her hands back and forth (Court File No. 33-4 ["Moore dep."], ¶ 5).[3] The neighbor then saw Jacques escort Plaintiff while handcuffed down her front steps and to his police car (*id.*, ¶ 6). The neighbor and Jacques contend Plaintiff vigorously resisted, yelling the entire time, repeatedly trying to kick Jacques, and spinning around to get out of his grasp (*id.*, ¶¶ 6-7; Jacques dep., pp. 68-71). However, Plaintiff denies she resisted Jacques's efforts to take her to his

---

[2]Plaintiff could not remember precisely how many times she was tasered. However, Jacques states he tasered her twice and the log from his taser confirms that (Court File No. 33-13, p. 2). Also, it is not clear where Plaintiff was tasered. Plaintiff states she was tasered both inside and outside the house (Hardwick dep., pp. 124-25). A neighbor saw Plaintiff and Jacques the entire time they were outside but never saw Jacques use a taser on her (Court File No. 33-4, ¶ 8). Jacques, however, states he used his taser while outside the house (Jacques dep., pp. 71-72).

[3]In an attempt to attack the neighbor's credibility, Plaintiff introduced evidence of bias by the neighbor. This is unnecessary because, being a motion for summary judgment, the Court does not assess the credibility of witnesses. Rather, the Court draws all justifiable inferences in favor of the nonmovant and her evidence. *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999). Therefore, although the Court has described the contents of the neighbor's affidavit, for the purposes of this motion, the Court relies on Plaintiff's account when there is a dispute in the evidence.

police car (Court File No. 33-21, pp. 135-37). She denies kicking Jacques or trying to run away from him (*id.*). At no point did Jacques feel Plaintiff was a threat to injuring him (Court File No. 43-10, p. 92).

### B. CPD's Point System

John Dailey, a police lieutenant who commanded CPD's Echo Team Patrol unit, created a point system in the fall of 2004 after noticing that some officers were barely performing any work (Court File No. 40-3, pp. 11-12). The point system was designed to encourage officers to do their jobs (*id.*, p. 12). Arrests were worth more points than other work, including citations (Court File Nos. 40-6, p. 45 & 40-9, p. 7). Dailey began using the system to evaluate his officers and at some point communicated his system to them (Court File No. 40-3, p. 14). Dailey required officers to maintain a certain number of points, and they received a verbal warning if they dropped below the minimum three months in a row (*id.*). Some officers believed they faced repercussions for performing poorly (Court File Nos. 40-4, p. 8 & 40-7, p. 9). The best-performing officer each month got to choose his patrol zone and lunch time (Court File No. 40-3, p. 18). High performing officers may have also received better equipment (Court File Nos. 40-5, p. 17 & 40-6, p. 46).

There is evidence the chief of police was involved in propagating the point system to all the shift lieutenants (Court File No. 40-4, p. 9). Some personnel criticized the point system at the time it was implemented (*id.*). One said the point system would "force officers to make bad arrests" and "cause them to be in positions where they would make decisions which would potentially put them in lawsuit situations" (*id.*, p. 10). The point system was formally abandoned in November 2005 (Court File No. 33-16), but there is evidence of Dailey using the system for his officers into May 2006 (Court File Nos. 40-5, p. 16 & 40-7, p. 8) and through March 2007 (Court File No. 40-6, p.

4

47). Jacques worked under Dailey through approximately June 2006 (Court File No. 43-10, p. 90).

Jacques was a high-performing officer under the point system (Court File No. 40-7, p. 9). A supervisor stated he told some officers to "back off" and stop "over achieving," which he indicated meant officers should arrest someone "because they need to be arrested," not "because it excites you" (Court File No. 40-4, pp. 33-35). The supervisor thinks he told this to Jacques (*id*.).

### C. Procedural History

Plaintiff brought this action against Defendants under 42 U.S.C. § 1983 alleging Jacques used excessive force against her in violation of the Fourth and Fourteenth Amendments and CPD "has a custom, practice or policy, executed by its police department, of using the threat of lethal force inappropriately against citizens who are not engaged in any criminal activity." (Court File No. 1, ¶¶ 8-9). Her constitutional claim also alleges Jacques made an illegal warrantless arrest of Plaintiff pursuant to CPD policy (*id*., ¶ 9). Plaintiff also asserts Jacques committed "outrageous conduct" (*id*., ¶ 10), assault and battery (*id*., ¶ 11), and intentional infliction of emotional distress (*id*., ¶ 12). Alternatively, Plaintiff alleges Jacques was negligent, and the City is liable for its employee's negligence (*id*., ¶ 13). Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and costs (*id*., ¶ 14).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.  DISCUSSION

#### A.  Fourteenth Amendment

Plaintiff sued under 42 U.S.C. § 1983 for alleged violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution. Section 1983 allows a person to sue to vindicate the deprivation of federal constitutional and statutory rights. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Plaintiff alleges Jacques's desire to get points in the point system led him to violate her rights

to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Defendant contends the Fourteenth Amendment is inapplicable to this action. Because Plaintiff has a viable Fourth Amendment claim, the Court will not analyze her claim under the Fourteenth Amendment. *See County of Sacramento*, 523 U.S. at 843; *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002). The Fourteenth Amendment is only relevant by making the Fourth Amendment applicable to the states. To the extent Plaintiff has made claims under the Fourteenth Amendment, those claims will be **DISMISSED** and the Court will analyze them under the Fourth Amendment.

### B. Fourth Amendment

The Fourth Amendment to the U.S. Constitution guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Under 42 U.S.C. § 1983, a plaintiff may seek money damages from a government official who violates her Fourth Amendment rights. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Therefore, the Court will consider the constitutionality of (1) the warrantless entry into Plaintiff's house, (2) her arrest, and (3) the force used against Plaintiff after she was placed in handcuffs. After discussing each of those issues, the Court will address whether Jacques is entitled to qualified immunity. The Court will then address whether the City is liable for constitutional violations under 42 U.S.C. § 1983.

#### 1. Unlawful Entry into House

Plaintiff contends she was arrested in her house without an arrest warrant. Defendants contend Jacques lawfully arrested Plaintiff because he had probable cause to charge her with failing to report an accident and resisting arrest. Jacques also asserts the defense of qualified immunity. Notably, Defendants never address the fact the arrest occurred in Plaintiff's house without an arrest

7

warrant.

The Supreme Court has held "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980) (internal citations omitted). That reasoning also applies to misdemeanors. *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 689 (6th Cir. 2006). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313 (1972).

Plaintiff was charged with failing to report an accident (Tenn. Code Ann. § 55-10-106) and resisting arrest (Tenn. Code Ann. § 39-16-602), both of which are misdemeanors. Both parties agree Jacques arrested Plaintiff in her house. He did not have an arrest warrant. Plaintiff contends she did not consent to his entry into the house.[4] There do not appear to be exigent circumstances.[5] Hence, a reasonable jury could find the entry into the house violated the Fourth Amendment.

Having determined there was a constitutional violation, the Court will consider Jacques's assertion he is entitled to qualified immunity. *County of Sacramento*, 523 U.S. 833, 842 n.5; *Fox*

---

[4]Plaintiff described closing the door to prevent Jacques from entering. *Compare Soltesz v. City of Sandusky*, 49 F.App'x 522, 527 (6th Cir. 2002) (no Fourth Amendment claim for warrantless entry where plaintiff had invited police into his home). Defendants did not argue there was consent, although Defendant's factual summary states Plaintiff did not tell Jacques to leave. However, a reasonable jury could find Plaintiff did not consent to Jacques forcing his way into her house just because she did not then tell him to leave.

[5]Exigent circumstances exist when (1) an officer was in hot pursuit of a fleeing suspect; (2) the suspect posed an immediate threat to the arresting officer or to the public; and (3) immediate police action was necessary to prevent the destruction of vital evidence or to prevent the escape of a known criminal. *Ingram v. City of Columbus*, 185 F.3d 579, 587 (6th Cir. 1999). Defendants have not argued exigent circumstances existed, and it is not apparent from the evidence that there were exigent circumstances.

8

*v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007). Plaintiffs bear the burden of defeating qualified immunity, which is a legal issue to be decided by the Court. *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier*, 533 U.S. at 200 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It protects government officials from liability if they are performing discretionary functions as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be "clearly established in a particularized sense" such that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fox*, 489 F.3d at 235; *accord Saucier*, 533 U.S. at 202. A right is clearly established when there is binding precedent by the Supreme Court, the court of appeals or the district court. *Ohio Civil Serv. Employees Ass'n. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988).

Jacques is not entitled to qualified immunity for unlawfully entering Plaintiff's house because there is clearly established law he could not arrest Plaintiff in her home without a warrant and absent consent or exigent circumstances. This clearly established law comes from the Supreme Court's decisions in *Payton* and *Welsh*, described *supra*.

The qualified immunity analysis depends on whether a defendant violated the clearly established federal right on which the claim against him is based. *Elder v. Holloway*, 510 U.S. 510, 515 (1994) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)). Therefore, the parties' arguments about whether Jacques complied with state law are irrelevant. *See id*.

   2.   **Unlawful Arrest**

Under the Fourth Amendment, any arrest requires probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000). In determining probable cause, the Court must take account of the "common sense and law enforcement experience" officers use in assessing facts at the time of the arrest. *Evans v. Detlefsen*, 857 F.2d 330, 334 (6th Cir. 1988). "The judicial determination of probable cause involves evaluating the historical facts leading up to the arrest, and whether those facts, viewed by an 'objectively reasonable police officer,' satisfy the legal standard of probable cause." *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)) (internal citation and quotation marks omitted).

There is undisputed evidence the crossing guard told Jacques she was hit by Plaintiff's car and Plaintiff told Jacques she had been driving. Regardless of whether Plaintiff admitted or denied hitting the crossing guard, Jacques had facts creating probable cause Plaintiff committed a crime, and therefore his arrest of her did not violate the Fourth Amendment's probable cause requirement. Accordingly, Plaintiff's Fourth Amendment claim based on a lack of probable cause theory will be **DISMISSED**.

The parties use numerous pages in their memoranda debating whether Tennessee statutes allowed an arrest in this situation. Because the U.S. Constitution allows arrests when there is probable cause, the Court need not determine its propriety under state law. *See* U.S. Const. art. VI § 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof. . . shall be the supreme Law of the Land. . . ."). Moreover, any violations of state law Jacques may have committed cannot be remedied under § 1983. *Lewellen v. Metro. Gov't of Nashville and Davidson County*, 34 F.3d 345, 347 (6th Cir. 1994).

### 3. Excessive Force

Plaintiff contends the force used by Jacques was excessive based on her assertions she was not resisting. Defendants say Jacques's force was reasonable and asserts he is entitled to qualified immunity.

Claims of excessive force are analyzed under a reasonableness standard based on "the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 395-96. The Court must examine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*; *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007). This requires balancing Plaintiff's Fourth Amendment interests against the government's interests. *Graham*, 490 U.S. at 396; *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). In evaluating those interests, the Supreme Court has directed courts to look at factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006); *Burchett*, 310 F.3d at 944.

There is a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Graham*, 490 U.S. at 396; *accord Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Burchett*, 310 F.3d at 944. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham*, 490 U.S. at 396. The reasonableness inquiry allows for the fact that police officers must often make split-second judgments about the necessary amount of force. *Id.*

Construing the facts in the light most favorable to the non-moving party, as the Court must

11

do in a motion for summary judgment, it was not reasonable for Jacques to twice use his taser on a woman who was not resisting his efforts to take her to his police car. Evaluating the factors articulated in *Graham*, the crime at issue (failure to report a traffic accident causing relatively minor personal injury) was not severe; the suspect did not pose a threat to the officer (Jacques admitted this); and the suspect was not actively resisting arrest (Plaintiff makes this assertion).

The disagreement over whether Plaintiff actively and somewhat violently resisted arrest is a genuine dispute of material fact. Defendants cite cases in which police used a taser on handcuffed suspects who posed a threat to themselves or others. These cases are inapposite to this situation where, construing the facts most favorably to Plaintiff, she was not resisting arrest and the use of force was therefore unnecessary. Accordingly, summary judgment is inappropriate on this claim.

Defendant's assertion of qualified immunity fails on this theory, too, because the right to be free from excessive force during arrest is clearly established constitutional law. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000); *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999).

### 3. Constitutional Liability by the City

Defendants move to dismiss the constitutional claims against the City on the grounds CPD's training is not inadequate and CPD does not have any policy or custom allowing excessive force or illegal arrests.[6] Plaintiff argues CPD's point system improperly motivated Jacques to arrest Plaintiff

---

[6]Defendants also move to dismiss the claim for punitive damages against the City. Coming at the end of a section on constitutional law, this request can only reasonably be read as relating to the request for punitive damages under 42 U.S.C. § 1983. As support, Defendants cite just one case, which relies on Michigan law. Regardless of the lack of authority provided by Defendant, municipalities are not liable for punitive damages under § 1983. *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *Estate of Callahan v. Detroit*, 863 F.2d 47 (6th Cir. 1988). Also, since the Court will dismiss Plaintiff's § 1983 claim against the City, this issue is moot. Defendants did not request the Court dismiss any possible punitive damages claims under Tennessee law, nor did they provide any support for doing so.

and officers were not properly trained.

Although § 1983 imposes liability on "any person," the statute applies to municipalities like the City. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). There are two issues raised when a § 1983 claim is asserted against a municipality: (1) whether the plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Because the Court has declined to grant summary judgment to Jacques on his alleged constitutional violations, the Court will now examine whether the City is liable. *See Bukowski v. City of Toledo*, 326 F.3d 702, 712-13 (6th Cir. 2003).

A municipality is not liable merely for employing a wrongdoer. *Monell*, 436 U.S. at 691; *Gregory v. Shelby County*, 220 F.3d 433. Rather, a municipality is only liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694; *accord Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006). This requires "a direct causal link between the policy and the alleged constitutional violation. *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (internal quotations omitted).

The evidence construed in the light most favorable to Plaintiff establishes that CPD operated a point system that was at least tolerated by the chief of police. Even after the point system was abandoned, a police lieutenant continued using it and Jacques was apparently subject to it at the time Plaintiff's arrest took place. However imprecise and senseless a point system is in evaluating officers, it is not a constitutional violation.

Plaintiff asserts the "Cleveland Police Department has either promoted or tolerated with

13

deliberate indifference the usage of a Points System which improperly motivates officers such as the Defendant, Christopher Jacques, to physically arrest persons such as the Plaintiff" (Court File No. 40, p. 15). For this proposition, Plaintiff cites three cases, none of which actually support the proposition. In the first case cited by Plaintiff, *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003), there was evidence of a constitutional violation by a county because a policy implemented by the sheriff caused some people to be detained over 48 hours without a judicial determination of probable cause. In the second case, *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999), the court affirmed summary judgment against a plaintiff who had no evidence of a city policy or custom "allowing unlawful dwelling entry or the use of excessive physical force during arrest." In the third case, *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1002 (6th Cir. 1994), the court reversed judgment against a city where there was no evidence the city's policy led to a warrantless search. Not only do the cases cited by Plaintiff not support her proposition, but *Brown* and *O'Brien* support Defendant's arguments.

Plaintiff did not cite any law suggesting such a point system is unconstitutional. Plaintiff asserts a jury could conclude Jacques was motivated by the point system to arrest Plaintiff. However, there is no evidence to support this claim. Jacques performed well under the point system and at one point he may have been instructed to not make as many arrests. But there is no evidence he was making false arrests. Nor is there evidence he was utilizing excessive force in making arrests. Although one police commander worried the point system would lead to lawsuits, fear of lawsuits is not evidence of an unconstitutional policy. There is no evidence from which a reasonable jury could infer the point system's existence caused Jacques to falsely arrest Plaintiff.

Officers in any police department are evaluated based on various criteria, which may include

arrests. Although CPD's point system oversimplifies the task of evaluating officers by assigning numerical values to tasks which should not be so easily measurable, it is not much different than any other system of evaluation which measures officers' productivity. Plaintiffs have not cited any authority that evaluating officers based on numerical values assigned to various work activities is unconstitutional.

Plaintiff also claims the City is constitutionally liable because the constitutional violations were caused by inadequate training that resulted from a "deliberate indifference" to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 385 (1989). Defendants asserts Plaintiff has no evidence to support a claim that claim.

In support of this claim, Plaintiff first contends Jacques was not trained on when state law allowed him to make misdemeanor arrests. However, CPD's alleged failure to train Jacques about the requirements of state law is not a federal violation. *See Lewellen*, 34 F.3d at 347. Furthermore, Plaintiff did not cite any evidence CPD did not train Jacques on the state statute. Even if Jacques violated the state statute, there is no evidence CPD did not properly train him.

Plaintiff also contends Jacques was not given sufficient training on when to use a taser.[7] She points out the chief of police was unable to articulate in his deposition whether an officer could use a taser on an individual for not providing identification. Regardless, there is no evidence about the City's training of officers. Plaintiff must provide evidence that training was inadequate and this inadequate training was the result of deliberate indifference. She has done neither, and so cannot prove the City is responsible for constitutional violations. Therefore, the constitutional claims

---

[7]Plaintiff submits that Defendant has used his taser 12 times, which is "above average," but does not cite this assertion. Moreover, by itself, above average taser use is not unconstitutional.

15

against the City will be **DISMISSED**.

### D. State Claims

Defendants did not present any argument on why Plaintiff's state claims should be dismissed, except for declaring they are immune under the Governmental Tort Liability Act ("GTLA"), although they do not even cite a code section providing this immunity. With Defendants not having made any substantial argument for dismissal of the state claims, Plaintiff did not address the matter. Ironically, Defendants wrote in their reply: "The Plaintiff also fails to address the state law claims raised by these Defendants in their motion for summary judgment and memorandum in support" (Court File No. 43, p.1 ).

Because Defendants mention immunity under the GTLA, the Court will briefly address that issue. The GTLA protects governmental entities from suits unless immunity is removed or the governmental entity has consented to suit. *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997); *see generally* Tenn. Code Ann. §§ 29-20-101 to -407. Municipalities in Tennessee, such as the City, are included as governmental entities. Tenn. Code. Ann. § 29-20-102(3)(A). There is no exception to immunity for intentional infliction of emotional distress, assault, or battery. Accordingly, the City is immune from suit for intentional infliction of emotional distress, assault, and battery, and those claims against the City will be **DISMISSED**.

The GTLA removes immunity from governmental entities for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." § 29-20-205. However, there is an exception for negligence claims based on injury arising from, inter alia, false arrest and "civil rights." § 29-20-205(2). This means the City is immune if Plaintiff's negligence

16

claims are based on false arrest or civil rights injuries. Because the parties have not argued the basis for the negligence claim, the Court does not know whether the City's immunity is removed. When municipal immunity is removed under the GTLA, employees receive the immunity instead. Tenn. Code Ann. § 29-20-310(b). Here, since it is unclear whether the City's immunity for negligence is removed, the Court does not know if Jacques should have immunity. Therefore, the Court cannot dismiss the negligence claim against either defendant.

Regarding the state law claims of assault, battery, and intentional infliction of emotional distress against Jacques, the parties have not presented arguments, so the Court cannot analyze whether the claims should be dismissed. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

### E. Cleveland Police Department as Defendant

The parties agree CPD is not an entity capable of being sued, and accordingly the Court will **DISMISS** the Cleveland Police Department from this case.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 33).

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**